## CAMPBELL v. UNITED STATES.

### No. 12036.

Circuit Court of Appeals, Fifth Circuit.

April 1, 1948.

SIBLEY, Circuit Judge, dissenting in part.

———◆———

Bart A. Riley and A. C. Dressler, both of Miami, Fla., for appellant.

Fred Botts, Asst. U. S. Atty., of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellant and one Kirpatovsky were indicted in four counts; the first three charged violations of the Federal Communications Act, 47 U.S.C.A. §§ 301(d), 301(b), and 318; and the fourth charged conspiracy to do the acts charged in the first three counts. Appellant alone was tried. He was convicted only on Count 1, and sentenced to six months' imprisonment. He appeals from that conviction chiefly on two grounds: (1) that the court erred in denying appellant's motion for acquittal, and (2) that the court erred in denying appellant's exceptions to the charge as given by the court to the jury.

Kirpatovsky owned and had installed in his apartment in Miami, Fla., a radio transmission set. He had a radio station license issued by the Federal Communications Commission, but no evidence was introduced to show whether or not the license had been issued for this particular station. On February 18, 1947, and on several days thereafter, the Government monitoring station in Miami heard signals broadcast on an unauthorized frequency, which signals were also heard at the Government's station in Powder Springs, Ga. On March 3, Government engineers finally traced the signals to the Kirpatovsky apartment. As the engineers stood outside the apartment door, they heard a voice within saying, "Testing, testing." They knocked on the door, and after a delay of some minutes Campbell opened the door, identified himself, and said there was no one else in the apartment. He denied any knowledge of the signal "Testing, testing," but the engineers testified that his voice was the voice they had heard giving the signal. Campbell had no radio operator's license, and following his arrest he was indicted and tried.

Count 1, upon which appellant was found guilty, reads as follows:

"On, to-wit, March 3, 1947, at Miami, in the Southern District of Florida, John Allen Campbell, one of the defendants herein, unlawfully, wilfully and knowingly did use and operate certain apparatus for the transmission of energy, communications and signals by radio without a license having first been granted to him the said John Allen Campbell by the Federal Communications Commission *in accordance with Section 301 of Title 47*, U.S.C.A., authorizing the use and operation of certain apparatus used and operated by the said defendant as aforesaid, and that the said John Allen Campbell did unlawfully, wilfully and knowingly, by the use and operation of the apparatus aforesaid, transmit energy, communications and signals by radio from one place within the State of Florida, in the Division and District aforesaid, to other places beyond the borders of the State of Florida, to-wit, to' places in the State of Georgia, and to other points and places to the grand jurors unknown. [Emphasis added.]

"And the grand jury further charges that at the time and place aforesaid, the defendant Sergei V. Kirpatovsky was *then* and there present, aiding, abetting, counseling, assisting and advising the defendant John Allen Campbell the offenses aforesaid in the manner and form aforesaid to do and commit."

Section 301, Title 47 U.S.C.A., is set forth in the margin.[1]

[1] "§ 301. License for radio communication or transmission of energy.

"It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of interstate and foreign radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any Territory or possession of the United States or in the District of Columbia to another place in the same Territory, possession, or District; or (b) from any State, Territory, or possession of the United States, or from the District of Columbia to any other State, Territory, or possession of the United States; or (c) from any place in any State, Territory, or possession of the United States, or in the District of Columbia, to any place in any foreign country or to any vessel; or (d) within any State when the effect of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place ,within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State; or (e) upon any vessel or aircraft of the United States; or (f) upon any other mobile stations within the jurisdiction of the United States, except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter. (June 19, 1934, ch. 652, § 301, 48 Stat. 1081.)"

■ It is apparent that the alleged offense averred in the count was charged substantially in the words of the statute. But we think the allegations of the count were too general and did not sufficiently inform the defendant of the accusations against him. The words "in accordance with Section 301 of Title 47, United States Code [47 U.S.C.A. § 301] authorizing the use and operation of certain apparatus," raise the question, What is in accordance with the Section? The answer to that is finally found in the last clause of the Section, "except under and in accordance *with this chapter* and with a license in that behalf granted *under the provisions* of this chapter." That clause relates to subsequent sections of the Act, but nowhere in Count 1 do we find any specific reference to other, more definite provisions of the Act.

"The statute upon which the indictment is founded only describes the general nature of the offense prohibited; and the indictment, in repeating its language without averments disclosing the particulars of the alleged offense, states no matters upon which issue could be formed for submission to a jury." United States v. Hess, 124 U.S. 483, 486, 8 S.Ct. 571, 573, 31 L.Ed. 516; and see Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505, and United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135.

Under the wording of Count 1, the Government might have intended to charge appellant with operating an unlicensed station, or with operating a station without an operator's license. Appellant's counsel assumed the charge related to an unlicensed station; the Government declares it related to the lack of an operator's license. In our view, it may have related to either.

The difficulty seems to lie in the use of the word "operate." At first glance that word would appear to be correctly used only as a reference to the actual, mechanical manipulation of radio apparatus, which manipulation is authorized by an *operator's license*. But an examination of the Act reveals that in Section 307, the first section dealing specifically with the issuance and terms of *radio station licenses*, the wording is: "(d) No license granted for the operation of a broadcasting station * * *." Here the word is clearly used as a reference to the general conduct or management of a station as a whole, as distinct from the specific technical work involved in the actual transmission of signals. Section 318, which deals with *operator's licenses*, uses the phrase "the actual operation of all transmitting apparatus * * *." The use of the word "actual" here is unnecessary, if not meaningless, unless its purpose is to differentiate the meaning of the word "operation" as employed in this Section 318 from the meaning as employed in either Section 301 or 307.

■ This comparison, then, of the uses of the words "operate" and "operation" in the different sections of the Act in question indicates that under Section 301 the phrase "No person shall use or operate any apparatus for the transmission of * * * signals by radio" is intended to cover generally both radio stations and radio operators. It follows that a count drawn, as is Count 1 here, covers both, unless one or the other is exclusively specified. Since there is no exclusive specification in the count, appellant could not know exactly with which offense he was charged, and we think, therefore, that that count was fatally defective.[2]

But even if this were not so, and even if we give the weight for which the Government contends to the phrase "to him" as meaning an operator's license, we remain faced with appellant's objection that the court's charge to the jury was so inadequate as to call for a reversal.

■ An examination of the charge as to Count 1 of the indictment shows that it constitutes chiefly a reading by the court to the jury of all of Section 301 and of Count 1. Not a word is said as to exactly what is charged in the count, nor of what proof is necessary under it. We think this amounts to there having been virtually no charge, and therefore, there is reversible error.

[2] It is no answer to say that it was proved that he had no license issued to him of any sort. It was shown that Kirpatovsky owned the station and had a station license. Appellant therefore was not required to have a station license, only an operator's license.

454

On the twin grounds that both the count and the charge to the jury are defective, the judgment appealed from is

Reversed.

SIBLEY, Circuit Judge (dissenting in part).

I think the charge, over due objection, failed to tell the jury what must be shown under each count to constitute guilt, and a new trial, which the appellant moved for generally, ought to be granted generally, that is on all counts.

I do not think count one, on which conviction was had, is fatally defective however. The mention of Section 301 of the Act at least does no harm, for it may be disregarded: Rule of Criminal Procedure, Rule 7(c), 18 U.S.C.A. following section 687. It however is as broad as the Act, for it prohibits the use or operation of radio apparatus in interstate communication "except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter." The indictment in count one charged appellant with having used such apparatus in such communication without a license issued to him. It was proved that he had no license of any sort. He is guilty under the undisputed evidence, on this point. He did not attack the count for uncertainty or otherwise. If he did not know which license it was contended was lacking, he could have asked for a bill of particulars, but did not. The jury found he did just what the count said he did, and thereby he violated the Act. I think we are over-technical in saying that a count in the very words of the Act does not charge a crime, and is fatally defective though not attacked for any lack. 18 U.S.C.A. § 556.