Mack KITCHENS, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 6050.

United States Court of Appeals
Tenth Circuit.

Nov. 18, 1959.

Rehearing Denied Dec. 10, 1959.

[9.] See 28 U.S.C.A. § 1912; Fifth Circuit Rule 30, subd. 2.

Richard M. Kranzler, Denver, Colo., for appellant.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Mack Kitchens, Jr., and his wife, Betty, were convicted on separate indictments charging them with filing false claims against the United States, forging and uttering United States Treasury checks, and conspiring to commit the foregoing offenses.

Mack Kitchens, Jr., appeals from judgments and sentences which total 15 years confinement.[1] The principal questions

---

1. Kitchens was sentenced to 5 years imprisonment on one count charging the offense of filing false claims against the United States, and 10 years on one count charging forgery. Sentences on all other counts were to run concurrently, either with the 5 year sentence or the 10 year sentence.

presented here, on a consolidated record, arise out of his defense of insanity.

The charges grew out of a rather elaborate and far-flung scheme to obtain refund checks from the Department of Internal Revenue. The scheme included the preparation and filing of income tax returns on regular 1040 forms and the request for refunds based on attached W-2 forms showing amounts withheld by employers in excess of the tax due on earnings from such employment. A large number of such returns bearing fictitious names and addresses were filed by Kitchens and his wife, including seven that were found to have been filed in the State of Wyoming. When the refund checks were received by Kitchens or his wife through the mail, they were endorsed—usually by Kitchens—and cashed.

Upon arraignment, Kitchens entered pleas of not guilty and not guilty by reason of insanity. It was learned that Kitchens had a long history of claimed insanity and had at different times been adjudicated insane and committed to mental institutions. These commitments followed arrests for violation of criminal statutes. Prior to trial in this case, under the provisions of Title 18 U.S.C.A. § 4244, the United States requested that there be a judicial determination of the mental competency of Kitchens to understand the proceedings against him and to properly assist in his own defense. He was ordered committed to the Veterans Administration Hospital at Sheridan, Wyoming for a period of 30 days for an examination by a qualified psychiatrist. The result of this examination was a report that Kitchen's behavior was typical of a person with an anti-social reaction but that he was competent to understand the proceedings against him and to assist in his defense, and was not insane or mentally incompetent.

■■ When the question of the defendant's sanity arises in the trial of a criminal case, the burden is upon the prosecution to prove the defendant sane beyond a reasonable doubt. McKenzie v. United States, 10 Cir., 266 F.2d 524. To sustain this burden, the prosecution introduced the testimony of a number of psychiatrists and other witnesses who had had occasion to observe and examine Kitchens, and each testified that he was sane at the time of the commission of the offenses charged and at the time of trial. The defendant submitted competent evidence directly in conflict with that of the prosecution, but we think it would serve no useful purpose to discuss it in detail. It suffices to say that the government's evidence meets the reasonable doubt test and that the jury resolved the conflict adverse to Kitchens.

■ The defense offered in evidence a number of hospital records, findings of psychiatrists, and the court records of three habeas corpus cases which Kitchens had brought seeking his release from a mental institution. The habeas corpus cases questioned the legality of Kitchen's confinement and related to his sanity. The trial court admitted the exhibits, including the court records, for the limited purpose of permitting experts to refer to them and to be examined with regard to their contents. Relevant portions of them were admissible for the purpose of showing the history of the previous mental condition of Kitchens and as bearing on the issue of his sanity at the time the alleged offenses were committed. Whitney v. Zerbst, 10 Cir., 62 F.2d 970. Although the exhibits were not admitted unconditionally into evidence, all of the information in them was before the jury as a result of reference made to them by several witnesses, including Kitchens. There was no prejudicial error in the court's action in admitting the exhibits for a limited purpose only.

■ While conceding that the trial court's instructions on the law of insanity were those usually given in such cases, it is contended that because of the unusual circumstances and prior adjudications of insanity, additional instructions should have been given. No objection was made to the instructions but it is urged that the error was grave and resulted in such a miscarriage of justice

that this court should consider them. Ordinarily instructions to the jury will not be reviewed on appeal unless appropriate objections have been made. Rule 30, Fed.Rules Crim.Proc., 18 U.S. C.A. The courts, however, have generally held that the rule is otherwise "where there is manifest error and it is necessary to prevent a miscarriage of justice." Corbin v. United States, 10 Cir., 253 F.2d 646, 648; Ditrich v. United States, 10 Cir., 243 F.2d 729; Madsen v. United States, 10 Cir., 165 F.2d 507. In referring to the previous adjudications, the court instructed the jury that it was not bound by them and should make its own independent determination as to the sanity of Kitchens at the time the alleged offenses were committed. Nothing was said in regard to a presumption that insanity continued after an adjudication.[2] The jury was instructed that when the question of insanity arose, the burden was then upon the prosecution to prove the mental responsibility of the defendant. Upon proof of the prior adjudications and the introduction of other evidence of insanity, the government assumed the burden of proving the defendant sane beyond a reasonable doubt. A like question was discussed by this Court in Whitney v. Zerbst, supra, where it was held that evidence of adjudication of insanity is admissible on the issue of insanity in a later trial, but "it is not conclusive and may be rebutted by other evidence."[3] [62 F.2d 972.] And see Frame v. Hudspeth, 10 Cir., 109 F.2d 356, reversed on other grounds 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989. Although when a person is adjudicated to be insane, the condition is presumed to continue so long as the judgment is effective, we are satisfied that considering the instructions as a whole, the issue of insanity was fairly presented to the jury under the facts of this case. The effect of the presumption is to place upon the prosecution the burden of proving the defendant sane beyond a reasonable doubt, the same burden that arises whenever any evidence of insanity is presented.

█ █ In the counts concerning Treasury checks of the United States, it was alleged that Kitchens falsely made, uttered, published and forged the signature of the payee as an endorsement, knowing the same to be false and forged. The trial court denied a motion requiring the United States to elect upon which of the

2. The record discloses that in 1956 Kitchens was committed to a Montana hospital for the insane and immediately escaped; that during the period in which the crimes charged were being committed, he was returned to the institution and shortly thereafter was declared competent by a Montana court and released.

3. In discussing the right to try a person, who has been adjudged insane, for a subsequent criminal offense and to determine the issue of insanity at the time of the alleged offense, the court said:

"We cannot subscribe to the doctrine that a person committed for insanity who escapes and commits a criminal act is, because of such commitment, immune from prosecution therefor.

"Where, after an adjudication of insanity and commitment to an asylum in a civil proceeding, a person so adjudged and confined commits a criminal act, a court having jurisdiction over the offense may take him into custody and try him for such offense in the absence of statutory provision to the contrary. Myers v. Halligan, 9 Cir., 244 F. 420; In re McWilliams, 254 Mo. 512, 164 S.W. 221.

"While insanity, in the sense that term is used in the criminal law, at the time the criminal act was done may be asserted as a defense to the criminal charge and present insanity may be asserted as a bar to trial on such charge, the issues with respect to such a defense or bar are for the determination of the court having jurisdiction of the criminal offense. In re McWilliams, 254 Mo. 512, 164 S.W. 221. The court may submit the issue of present insanity as a bar to trial to a jury impanelled for that purpose, or may determine the issue itself. Insanity at the time of the commission of the offense is a defense and presents an issue under the plea of not guilty for the determination of the jury at the trial for the offense. Ex parte Charlton, C.C. N.J., 185 F. 880; Charlton v. Kelly, 229 U.S. 447, 462, 33 S.Ct. 945, 57 L.Ed. 1274, 46 L.R.A.,N.S., 397; Youtsey v. United States, 6 Cir., 97 F. 937.''

offenses named in these counts it would proceed to trial. The language of the indictment is that of the statute, (18 U.S.C.A. § 495) and we have held in numerous cases that if a statute embraces several separate and distinct acts as a crime, an information or indictment in the language of the statute alleging more than one of the statutory offenses is not duplicitous, if pleaded in the conjunctive. Cathcart v. United States, 10 Cir., 244 F.2d 74, certiorari denied 354 U.S. 924, 77 S.Ct. 1387, 1 L.Ed.2d 1439; McDonough v. United States, 10 Cir., 227 F.2d 402; Troutman v. United States, 10 Cir., 100 F.2d 628. Kitchens was not misled by the charges, which, in fact, he admitted in an attempt to protect his wife.

In defining certain of the charges against Kitchens, the trial court read to the jury the statute upon which those charges were based. It is urged that this was such gross error that this court should consider it even though there were no objections to the instructions. There is no merit to this contention. Title 18 U.S.C.A. § 495, which was read to the jury, defines in clear and unambiguous language the crimes of forgery and uttering or publishing forged instruments. No further definition of the offenses was requested and we find no prejudicial error. 23 C.J.S. Criminal Law § 1194.

It is urged that the endorsement of the United States Treasury checks issued to a fictitious person does not constitute forgery. The law is to the contrary. In Buckner v. Hudspeth, 10 Cir., 105 F.2d 393, 395, this court said:

> "Furthermore, to constitute forgery the name alleged to be forged need not be that of any person in existence. It may be wholly fictitious if the instrument is made with the intent to defraud and shows on its face that it has sufficient efficacy to enable it to be used to the injury of another."

See also Rowley v. United States, 8 Cir., 191 F.2d 949; Milton v. United States, 71 U.S.App.D.C. 394, 110 F.2d 556.

Other assignments of error, including the sufficiency of the evidence to sustain the conspiracy indictment, have been considered and found to be wholly without merit.

Affirmed.