Henry **WALKER, Jr.,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 21480.

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1965.

As Amended on Denial of Rehearing
April 13, 1965.

---

John R. Brown, Circuit Judge, dissented in part.

Harry C. Howard, Atlanta, Ga., for appellant.

Thomas K. McWhorter, Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., for appellee.

Before BROWN and BELL, Circuit Judges, and SPEARS, District Judge.

SPEARS, District Judge.

Appellant was charged in Counts One, Four, and Nine of an eleven count indictment with having unlawfully forged the names of the payees on various government checks, and he was charged in Counts Two, Three, Five, Eight, and Ten with uttering such checks. In each of the foregoing eight counts it was alleged that in the commission of the particular offense charged the appellant was aided and abetted by others. Count Six charged him with stealing from the mails, and Count Seven charged him with possessing stolen mail matter. The eleventh count charged a conspiracy to do the above acts.

A verdict of not guilty on Count One was returned by the jury, and Counts Seven and Eight were dismissed upon motion of the United States Attorney. Appellant was found guilty on the count of stealing from the mails, two counts of forgery, four counts of uttering, and on the conspiracy count. He was sentenced generally on all counts to eight years imprisonment. Counsel was appointed to represent him at the trial, and different counsel was appointed to appeal the case.

Although no objections were made at the trial to the Court's charge, appellant now offers a number of complaints with respect thereto, and argues that each claimed failure constitutes "plain error" under Rule 52(b) of the Federal Rules of Criminal Procedure.

He first says that as to all counts, other than the eleventh, the trial court did not instruct concerning either the essential elements of the offenses charged, or the principles of law which should guide the jury in its determination of the issues.

After reviewing each and every count in issue, the trial judge read to the jury the applicable statutes in full. No further definition of the offenses set forth in the indictment was requested. Unlike the statute involved in Campbell v. United States, 5 Cir., 1948, 167 F.2d 451,[1] the reading of which this Court

1. Title 47 U.S.C.A. § 301.

found to be virtually no charge at all, the language of the statute upon which Counts Two, Three, Four, Five, Nine and Ten were based,[2] contains plain and concise words which the average layman can be expected to understand. Consequently, we find no plain error affecting the substantial rights of appellant.[3]

Similarly, appellant challenges the omission of a charge to the effect that he could not be convicted as an aider or abettor unless the guilt of his principal had been established. The testimony of the witnesses as to the commission of the various acts was that they themselves had committed them, aided and abetted by the accused.[4] The Court read to the jury the statute relating to principals,[5] and explained it in general terms. In language that is clear and unambiguous, the statute authorizes, and the record fully sustains, appellant's conviction as an aider and abettor, even though he was charged as a principal.

We agree with appellant, however, that the Court erred in failing to charge on "intent" with respect to Count Six charging him with theft from the mails. The count is based on 18 U.S.C. § 1708, which does not mention intent. The case of Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), distinguishes between crimes at common law and those not so considered, and stands for the proposition that if intent was a necessary element of a crime at common law, it is still a requisite of the offense, even if the crime has been codified into a statute where it is not mentioned. Inasmuch as theft was a crime at common law requiring intent, the law still considers intent to be a necessary element of the crime, and the jury should have been so charged. The failure to do so was plain error.

There is no merit to appellant's contention that although the charge on con-spiracy in Count Eleven was sufficient, it did not deal with the elements of the specific offenses alleged to be the subject matter of the conspiracy.

Conspiracy to commit a crime is a different offense from the crime which may be the object of the conspiracy,[6] and it is not necessary that a conspiracy involve the violation of a specific substantive offense.[7]

In addition to stating in detail the elements of the conspiracy, the Court charged that it was only necessary to prove the conspiracy between two or more of those alleged to be conspirators, and the commission of at least one of the overt acts alleged in the indictment, in order to warrant a conviction of those shown to have conspired. Under the circumstances, nothing else was required.

But even if more detailed instructions as to the elements of the specific offenses alleged to be the subject matter of the conspiracy had been necessary, they were supplied in connection with Counts Four and Nine, each of which was also separately alleged in the conspiracy count as an overt act. Since appellant's conviction on both of them as substantive counts is hereinafter affirmed, it is immaterial that the charge as to other substantive counts was defective.

After the jury had been out approximately four hours and a half the judge called them back in and inquired as to whether they desired further help from him in regard to the law. The foreman replied, "Your Honor, we think we will reach a verdict soon. We don't think we are very far from it." The judge then gave what was in substance the "Allen Charge" preceded by the following: "I do want to state to the members of the jury that it is important that a jury reach a verdict, if possible. The jury room is no place for pride of opinion. It is a

2. Title 18 U.S.C.A. § 495.

3. Kitchens v. United States, 10 Cir., 1959, 272 F.2d 757, 761.

4. See Hendrix v. United States, 5 Cir., 1964, 327 F.2d 971, 975.

5. Title 18 U.S.C.A. § 2.

6. Pereira v. United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435.

7. See Glasser v. United States. 1942, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680.

place for exchange of views." No objection was interposed by the appellant. After that supplemental charge, the jury retired and returned in ten minutes with a verdict.

Appellant contends that this entire procedure constituted plain error in that the "Allen Charge" was itself error, and the supplemental charge went beyond that approved by the Allen case.[8]

This Court has twice recently said that error in giving an Allen charge is not plain error. Huffman v. United States, 5 Cir., 1962, 297 F.2d 754 (dissent by Judge Brown), and Andrews v. United States, 5 Cir., 1962, 309 F.2d 127 (dissent by Judge Wisdom).

The supplemental charge in this case does not go beyond that permitted in *Allen*. The trial judge cautioned against "pride of opinion", and he also spoke of the jury room as being a place for "exchange of views". In addition, he admonished the jury that "the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of his fellows", that "the verdict of the jury should represent the opinion of each individual juror", and that "no juror is expected to yield a conscientious conviction that he may have upon the evidence". Thus a proper balance between the desirability of agreement and the duty not to surrender conscientious convictions, was maintained. It was not a "one-sided" charge as was the situation in United States v. Rogers, 4 Cir., 1961, 289 F.2d 433.

In view of the fact that the foreman indicated that the jury expected to reach a verdict soon, it does not appear that there was really any necessity for the "Allen Charge" to be used at all. But the trial judge, in the exercise of his sound discretion, decided otherwise, and we hold that it was not plain error for him to give it.

Appellant insists that the indictment upon which he was tried is deficient in that Counts Two, Three, Five, and Ten, and so much of Count Eleven as relates to the uttering of forged checks, do not charge a violation of Title 18 U.S.C. § 495, because they do not contain an allegation that the acts charged were done with an "intent to defraud the United States". Here again, the alleged errors were not pointed out in the trial court, but we agree that they may be properly raised for the first time on appeal. Rule 12(b) (2), F.R.Cr.P.; United States v. Bailey, 7 Cir., 1960, 277 F.2d 560.

It is elementary that an indictment must set forth the elements of the offense sought to be charged, and if it does not a conviction based thereon cannot stand.[9]

One of the essential elements of the crime of uttering a forged writing is an "intent to defraud the United States". Count Two charges that on or about July 3, 1962 the appellant, aided and abetted by others, "did unlawfully, wilfully and knowingly, with intent to defraud, utter and publish to Fulton County Buehler Markets, Inc., 247 Forrest Avenue, N.E., No. 8, Atlanta, Georgia, as true the falsely forged name of the true payee, to wit, Frank H. Thorpe, on the back of the United States Treasury Check described in Count One of this indictment, well knowing said endorsement to be forged, in violation of Section 495, Title 18 U.S.C.A."

Each of Counts Three, Five, and Ten contains substantially the same formal language.

It is obvious from a mere reading of these counts that there is no allegation that the acts charged were done with an "intent to defraud the United States". While it may be said that to defraud the United States is implied, the essential elements of a crime

---

8. Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528.

9. See White v. United States, 10 Cir., 1933, 67 F.2d 71.

cannot be implied in an indictment.[10] Actually, a more reasonable construction of the language used is that the intent to defraud was directed toward the business firm at which the check was cashed.

In White v. Levine, 10 Cir., 1930, 40 F.2d 502, 503, an indictment based upon an earlier version of Section 495 was held to charge no offense, for the reason that "there was no averment of the essential intent 'to defraud the United States'". It is true that the indictment in that case removed any doubt as to what was intended, by using the phrase "intent to defraud American Trust Company, St. Louis, Missouri", but we do not think that a defendant should be called upon to speculate or conjecture concerning such an essential element of each offense charged in the substantive counts. We hold, therefore, that neither Count Two, Three, Five, nor Ten charges an offense.

■ However, the failure to mention "intent to defraud the United States" in Count Eleven charging conspiracy, is not a defect, because it was not necessary to state the object of the conspiracy with the same precision which would be required in an indictment charging the substantive offense. Williamson v. United States, 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278.

■ In Counts Four and Nine defendant was charged with forging endorsements on government checks "for the purpose and with the intent of obtaining or receiving from the Treasurer of the United States, the sum of money represented by said check", in violation of the first clause of 18 U.S.C. § 495. The quoted language of the statute clearly requires that the acts condemned must have been committed by the defendant for the purpose of obtaining money from the United States. The appellant contends, however, that the evidence only shows the defendant did the acts for the purpose of obtaining money from private persons.

When the defendant aided and abetted the forgery of the endorsement on the check described in each count, his purpose was to obtain a sum of money. While it is true that he would receive the money initially from whoever cashed the Treasury check, he was charged with knowledge that the United States would suffer the ultimate loss. Since the defendant is presumed to have intended to do what he actually did,[11] it follows that his participation in the crime was for the purpose of obtaining money from the United States, and the evidence amply supports his conviction on these counts.

■ The trial judge in this case imposed a general sentence of eight years, which is within the statutory limits for Counts Four and Nine, but in excess of the limit for Count Eleven. The undesirability of such a practice was demonstrated in an opinion written for this Court by Judge Brown in Benson v. United States, 5th Cir., 1964, 332 F.2d 288.

For all of the reasons hereinbefore given, appellant's conviction as to Count Six is reversed and remanded; his conviction as to Counts Two, Three, Five, and Ten, is reversed and rendered; and his conviction as to Counts Four, Nine, and Eleven is affirmed.

Irrespective of whether or not a further trial is held on Count Six, the general sentence is vacated, and the entire case is remanded to the District Judge "for correct resentencing in which the defendant will know precisely the penalty assessed as to each and every count and the order in which the sentences thereby imposed are to be served".[12]

JOHN R. BROWN, Circuit Judge (dissenting in part).

---

10. See United States v. Hess, 124 U.S. 483, at p. 486, 8 S.Ct. 571, 573, 31 L. Ed. 516.

11. See Haugen v. United States, 9 Cir., 1946, 153 F.2d 850, 853.

12. Benson v. United States, supra, 5th Cir., 1964, 332 F.2d 288.

I concur fully in the Court's decision and its opinion except as to the Allen charge or the variation in a minor key on Allen as found here.

It is high time we repudiate the use of the Allen charge. It is high time we remove the dynamite as an inducement to the awesome judicial responsibility of a jury verdict on which a man's life, his liberty, his freedom rests.

For a unanimous Court Judge Wisdom in Green v. United States, 5 Cir., 1962, 309 F.2d 852, 854, condemned its use in virulent terms. Echoing Colorado's characterization of it as a juridical "third degree," New Mexico's description as a "shot gun instruction" and the forthright recognition by the Arizona Supreme Court "that the evils [of its use] far outweigh the benefits * * *" and the "* * * decree that its use shall no longer be tolerated and approved * *," this Court had equally as much to say for itself. "The Allen or 'dynamite' charge is designed to blast loose a dead locked jury. There is small, if any, justification for its use. * * * There is no justification whatever for its coercive use. The jury system rests in good part on the assumption that the jurors should deliberate patiently and long, if necessary, and arrive at a verdict—if, but only if, they can do so conscientiously. It is improper for the court to interfere with the jury by pressuring a minority of the jurors to sacrifice their conscientious scruples for the sake of reaching agreement.[3]" 309 F.2d 852, 854.[1]

The pressures generated by the dynamite charge are out of keeping with that calm, deliberative purpose of a well run, carefully conducted judicial determination of a controversy over which passionate feelings may have been engendered in the community and which inescapably come to the surface now and then in the courtroom as advocates assert their zeal. It may be more sophisticated—and hence more destructive because its invidious impact is not so readily demonstrated—but in its operative purpose and effect it is the same as the ancient practice—shocking, but nevertheless legal for its day and time—against which all would now rebel. The Supreme Court of Missouri described it in this fashion in State v. Jeffors, 64 Mo. 376, 381. The "* * rule at common law * * * authorized the court to confine the jury under strict charge of a bailiff, to be fed on bread and water till the end of a term, unless a verdict was sooner returned; and if a verdict was not then returned, to transport them around the circuit in a cart until they did agree upon a verdict."

It was the Judges who first thought up the idea of the dynamite charge. It ought to be the Judges who put an end to it in a quick and not too decent a burial.

And in these rites, for the requiem I would take the words of Mr. Justice Clark speaking, not ex cathedra, but rather as Chairman of the Joint Committee for the Effective Administration of Justice delivered on the fiftieth annual meeting of the American Judicature Society August 14, 1963, in the report of that Joint Committee under the title "Progress of Project Effective Justice."[2] Reporting on the state and regional judge seminars, he first said:

"Our seminars do not attempt the transformation of the judge into a mechanical genius. We do not use Lee Loevinger's gadget 'jurimetrics.' Science may reach the moon but it will never reach the jury. It still takes more than 'symbolic logic' to do that. It takes an effective coun-

1. In note 3 Judge Wisdom, using figurative terminology of the Louisiana Bar, stated that the "organ of the Court agrees with the views expressed by Judge Brown, dissenting in Huffman v. United States, 5 Cir., 1962, 297 F.2d 754, 759." There then followed an extensive quotation from my former dissent. Since I was a member of that panel with Judge Wisdom, it means that at least for that case, the majority of the Court approved these strictures against its use.

2. Journal of the American Judicature Society, Vol. 27, No. 5, October 1963, p. 88 at 90.

sel with a competent judge presiding."

The Justice then concluded:

"Nor do we circulate the 'Allen charge' to the new judges as I used to do when heading up the criminal division in the Department of Justice. Allen is dead and we do not believe in dead law."