UNITED STATES of America, Plaintiff-Appellee,

v.

Harold Alfred BATES, Defendant-Appellant.

No. 72-1646.

United States Court of Appeals, Fifth Circuit.

Nov. 8, 1972.

James R. Malsch, Shreveport, La. (Court appointed), for defendant-appellant.

Donald E. Walter, U. S. Atty., D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for plaintiff-appellee.

Before DYER, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Harold Alfred Bates was charged in a two-count indictment with stealing a treasury check from the mail and causing another to falsely endorse and cash the check in violation of 18 U.S.C. §§ 1702, 495, 2(b).[1] From a jury conviction on both counts Bates appeals to this court. We find merit in two of Bates' assertions of error, and we therefore reverse the conviction and remand the case for a new trial.

At the trial below the government presented evidence that a federal income tax refund check, payable to James Smith, had been taken without the addressee's consent from a mail depository at a boarding house where Smith had formerly lived. The check was subsequently cashed at the Broadway Food Mart by one Harold Jackson. Jackson testified that appellant Bates had approached him in a barber shop and asked him to

---

1. 18 U.S.C. § 1702:
"Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

18 U.S.C. § 495:
"Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

"Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or

"Whoever transmits to, or presents at any office or officer of the United States, any such writing in support of, or in relation to, any account of claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited—

"Shall be fined not more than $1,000 or imprisoned not more than ten years, or both."

18 U.S.C. § 2(b):
"Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

get someone to cash the check. After several unsuccessful attempts at various liquor stores Jackson finally succeeded in getting Joe Belk, manager of the Broadway Food Mart, to cash the check. The proceeds were then divided between Jackson and Bates. Jackson stated that he was at all times acting under instructions from Bates and in the belief that Bates was in lawful possession of the check.

The prosecutor then asked Jackson whether he signed the name "James Smith" on the back of the check and Jackson replied that he did not. The prosecutor pled surprise and reminded Jackson of a prior written statement in which Jackson admitted forging the name of the payee to the check. Jackson, however, remained steadfast in his denial and testified that the prior statement was a lie which he uttered at the request of the prosecuting attorney. Quite understandably, the prosecutor quickly began questioning Jackson about other aspects of the case and, after cross-examination by defense counsel, Jackson was excused as a witness.

2. "HAROLD JAMES JACKSON, III, recalled as a witness on behalf of the Government, having previously been duly sworn by the Clerk, testified further as follows:

MR. MALSCH: If the Court please, before this witness testifies, may I enter an objection to his testimony again. It is not in rebuttal.

THE COURT: A matter has developed since the recess which needs to be brought out.

DIRECT EXAMINATION
BY MR. PERKINS:

Q. You understand, Jackson, you remain under oath to tell the truth?

A. Yes, sir.

Q. Did you tell me out in the hall that you wanted to apologize to me and the Court?

A. Yes.

MR. MALSCH: If the Court please, is this hearsay testimony?

THE COURT: No, sir, that is what he said.

BY MR. PERKINS:

Q. Did you tell me out in the hall you wanted to apologize for some of your testimony about this check?

Then, after adjournment for the noon recess, Jackson was called back to the witness stand. It is apparent from the statements of the court and counsel, set out in the margin below,[2] that during the noon recess Jackson decided to change his story after talking with the district judge, the prosecuting attorney and the postal inspector. This time Jackson stated that his testimony of the previous morning was not true and that he did indeed sign the payee's name on the back of the check after being told to do so by Bates. As soon as Jackson finished testifying the district judge turned to the marshal and, in the presence of the jury, stated as follows:

"Mr. Marshal, the Court instructs you to take this witness [Jackson] into custody on a charge of perjury on a complaint to be prepared by Mr. Swagerty, the Postal Inspector, and have him brought before the United States Magistrate, Mr. Barton, at the earliest possible time after Court adjourns this afternoon. You better have someone call Mr. Barton and make arrangements for him to come over here to handle the matter.

A. Yes, sir.

THE COURT: Did I happen to walk along right near the elevator going to lunch and you were about to go downstairs and you were talking to Mr. Perkins and Mr. Swagerty, the Postal Inspector?

THE WITNESS: Yes, sir.

THE COURT: And did I address you?

THE WITNESS: Yes, sir.

THE COURT: Did I tell you to tell the truth?

THE WITNESS: Yes, sir.

THE COURT: And nothing but the truth?

THE WITNESS: Yes, sir.

BY MR. PERKINS:

Q. Who put that name on the back of the check, 'James Smith'?

A. I did.

Q. Who asked you to put the name on the back of the check?

A. Bates did. He told me to sign the check and get it cashed and then I signed it and went in the store and cashed it. . . . "

"Of course, under the circumstances here, by having stated that he put his name on this check—this is entirely within the discretion of the United States Attorney's office—he has violated the Federal law in falsely endorsing this check. It is entirely up to the United States Attorney as to whether he will be prosecuted for that offense.

"The Court directs the charge of *perjury committed this morning* be filed on a complaint which the United States Attorney will authorize." (Emphasis supplied).

■ Bates contends on appeal that his right to a fair trial was violated because these statements prejudiced the jury in favor of crediting Jackson's afternoon testimony rather than the version of the facts which Jackson gave the previous morning. The morning version was more favorable to defense, of course, because the indictment as well as the instructions to the jury specifically charged Bates with causing Jackson to cash the check with knowledge that the payee's endorsement was forged. When Jackson took the stand for the second time and recanted and stated that he had forged the payee's name at the behest of Bates, the government's case was made stronger in regard to whether or not Bates knew the payee's signature was a forgery. At that point the jury was faced with a choice of believing one of two conflicting statements by the same witness. By instructing the marshal to arrest Jackson on a charge of perjury committed "this morning" the trial judge was in effect telling the jury that Jackson was lying in his initial testimony and being truthful in his recanted testimony.[3] It was for the jury to determine which of the witness' stories would be given credence, or indeed whether the witness would be believed at all. The comments by the trial judge clearly infringed upon the jury's credibility determining process and appellant was thereby deprived of a fair trial. See Bursten v. United States, 5 Cir. 1968, 395 F.2d 976; Moody v. United States, 5 Cir. 1967, 377 F.2d 175; Stevens v. United States, 5 Cir. 1962, 306 F.2d 834.

Because we believe that the trial court's comments in this case were of a severe nature, we hold that the error was not cured by the court's subsequent instruction which informed the jurors that they were the sole judges of the credibility of the witnesses. "It is well known, as a matter of judicial notice, that juries are highly sensitive to every utterance by the trial judge, the trial arbiter, and that some comments may be so highly prejudicial that even a strong admonition by the judge to the jury, that they are not bound by the judge's views, will not cure the error." Bursten v. United States, supra, 395 F.2d at 983. Accordingly, Bates' conviction on both counts must be reversed and the case remanded for a new trial.

■■ As to Count II of the indictment there is an additional ground for reversal. This count charged Bates with a violation of 18 U.S.C. § 495, but the indictment, as drawn up by the government, failed to specify that the acts were done with the "intent to defraud the United States". In Walker v. United States, 5 Cir. 1965, 342 F.2d 22, a criminal prosecution involving this very same statute, this court held that "intent to defraud the United States" was an essential element of the offense which must be alleged in the indictment. Contrary to the argument advanced by the government, our subsequent decision in Gearing v. United States, 5 Cir. 1970, 432 F.2d 1038, did nothing to alter the effect of *Walker* on the indictment in this case. See United States v. Fischetti, 5 Cir. 1971, 450 F.2d 34 at 39. Count II of the indictment is therefore defective because it fails to allege an essential element of the crime.

---

3. No reason appears from the record as to why the district court could not have charged Jackson with perjury outside of the presence of the jury.

Due to our disposition of the preceding issues, it becomes unnecessary to consider the other three issues raised by appellant.

For all of the above reasons the conviction of appellant is hereby

Reversed and remanded.