**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jesus Escalante ROMERO and Librado**
**Chacon, Defendants-Appellants.**

**No. 73–2346**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 14, 1974.

* Rule 18, 5 Cir.; Isbell Enterprisse, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Victor Arditti, El Paso, Tex. (Court-appointed), for defendants-appellants.

William S. Sessions, U. S. Atty., Wayne F. Speck, Asst. U. S. Atty., San Antonio, Tex., Edward S. Marquez, Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

PER CURIAM:

Jesus Escalante Romero and Librado Chacon here appeal from their conviction on a three-count felony indictment for the unlawful and knowing possession of a check stolen from the mail, forgery of the endorsement of a payee for the purpose of obtaining money from the United States, and utterance and publication of a forged check with intent to defraud the United States. In separate briefs filed by their attorney and by Chacon pro se, the appellants contend that admissions made by them were received in evidence in violation of Miranda v. Arizona, 1966, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, that the evidence is insufficient to sustain the convictions, and that the infirmities in the indictment in which they were charged compel reversal. None of these contentions is meritorious. We affirm.

On May 1, 1972, Romero and the Government's chief witness, Reynaldo Sanchez, were riding together in Sanchez's automobile in El Paso, Texas, when they saw Chacon standing on a street corner and stopped to talk with him. Chacon had two checks with him which he asked Sanchez to help him cash. Upon examining the checks, Romero suggested Leo's Grocery Store as a possible place to cash them. They drove to the store. Chacon waited in the car while Sanchez and Romero went into the store, bought some groceries, and attempted to cash a check drawn on the United States and showing one Dulces Mendoza as the payee. Since Sanchez had no identification, Romero told Leon Turk, the owner of the store, that Sanchez was his cousin

from California. Turk agreed to cash the check if Romero would co-sign it, which he did, and the proceeds were divided among Romero, Chacon, and Sanchez.

The three men were arrested and advised of their *Miranda* rights. Romero signed a "waiver of rights form" and admitted that he knew that the check was stolen. Sanchez pleaded guilty to a single count and testified against Romero and Chacon at their trial. Chacon also signed a waiver form, but denied ever having seen the stolen check. He was unable to explain, however, the presence of his fingerprint on the check. Romero and Chacon were tried by jury upon their pleas of not guilty, and were convicted on all three counts of the indictment. Romero was sentenced to five years imprisonment on Count I, and consecutive five year terms of probation on Counts II and III. Chacon received consecutive five year prison terms on Counts I and II, and a five year probationary term on Count III, to run consecutive to the sentences imposed on the first two counts.

■■ The appellants allege that the evidence was insufficient to justify the jury finding of guilty, and that Romero was not sufficiently advised of his right to remain silent to permit waiver of this right under *Miranda*. We find, however, ample evidence in the record to support the jury's conclusion that both defendants were guilty. Moreover, there is no merit to the contention that an agent's warning that any statement made by Romero could be used "for or against" him invalidated Romero's waiver of his rights. The waiver of rights form signed by the defendants fully informed them of their right to silence and of their other *Miranda* rights. Finally, there was no testimony that the agent's admonition that Romero's statements could be used "for or against" him prompted Romero to waive his rights or to make any incriminating statement.

The objections to the indictment, which is reproduced in the margin,[1] are somewhat more complex. The defendants contend that Count I is defective because it fails to charge that the offense was committed "with intent". They argue that Count II is defective because of the absence of terms describing elements of the offense such as "knowledge", "criminal intent", and "intent to defraud the United States". Central to the resolution of these contentions is our decision in Walker v. United States, 5 Cir. 1965, 342 F.2d 22, cert. denied, 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97, in which we reversed convictions under the statutes involved in this controversy.

1. THE GRAND JURY CHARGES:

FIRST COUNT
(18 U.S.C. § 1708)

On or about the 1st day of May, 1972, in the Western District of Texas, JESUS ESCALANTE ROMERO, REYNALDO SANCHEZ, and LIBRADO CHACON unlawfully had in their possession a check, number 50,262,294, dated May 1, 1972, drawn on the Treasurer of the United States, payable to the order of Dulces N. Mendoza, 3521 Alameda, El Paso, Texas, in the amount of $123.37, which had been stolen from the mail, well knowing said check had been stolen.

SECOND COUNT
(18 U.S.C. § 495)

That on or about May 1, 1972, in the Western District of Texas, JESUS ESCALANTE ROMERO, REYNALDO SANCHEZ, and LIBRADO CHACON, falsely forged the endorsement of the payee on the back of U.S. Treasurer Check in the amount of $123.37, for the purpose of obtaining from the United States said sum of money, copy of which said check with the forged endorsement thereon is attached hereto and made a part hereof.

THIRD COUNT
(18 U.S.C. § 495)

That on or about May 1, 1972, in the Western District of Texas, JESUS ESCALANTE ROMERO, REYNALDO SANCHEZ, and LIBRADO CHACON, with intent to defraud the United States of America, uttered and published as true the U.S. Treasurer Check described in the preceding count of this indictment to which reference is here made for all purposes, then well knowing the endorsement on said check to have been falsely made and forged.

A True Bill.

██ Contrary to the appellants' assertions, in *Walker* we did not hold that the word "intent" had to appear in a count which, like Count I here, charges a violation of Title 18, United States Code, Section 1708. Rather, *Walker* teaches that the trial judge must instruct the jury on the essential element of intent, as the judge properly did here.[2] Nor should *Walker* be construed to require that the precise phrase "[with] intent to defraud the United States" appear in counts alleging a violation of Title 18, United States Code, Section 495, the statute cited in Counts II and III here. We do not retreat from our *Walker* holding that "the essential elements of a crime cannot be implied in an indictment". We still "do not think that a defendant should be called upon to speculate or conjecture concerning . . . an essential element of each offense charged . . . ." 342 F.2d at 26–27. But no process of implication, conjecture, or speculation is necessary here to understand the allegation and all of the elements of the offense alleged. Count II charged that the defendants "falsely forged the endorsement of the payee on the back of [a] U. S. Treasurer check in the amount of $123.37, *for the purpose of obtaining from the United States said sum of money . . .*" (emphasis added). This language embraces an intent to defraud the United States. In *Walker*, the indictment was unclear, if not misleading, as to the object of the fraudulent activity. Count II of the indictment here was clear and complete, and permits of no misapprehension as to the elements of the offense charged. It is this, not the use of some talismanic phrase, that *Walker* requires.

██ Next the appellants argue that to charge both of them and Sanchez with "possessing", "forging", and "uttering" a single check was improper, since all three could not possibly have committed the alleged acts simultaneously. The appellants urge, therefore, that they should have been charged only as "aiders and abettors" or co-conspirators. We cannot agree. Possession may be individual or joint, actual or constructive, and it is not necessary that a defendant individually be in physical possession of an item for him to be charged with possession of it. See United States v. Abigando, 5 Cir. 1971, 439 F.2d 827, 834; Barnes v. United States, 5 Cir. 1965, 341 F.2d 189, 192 n. 5. Moreover, an aider and abettor may be charged and sentenced as a principal. See United States v. Trollinger, 5 Cir. 1969, 415 F.2d 527, 528, n. 3.

██ Finally, the appellants insist that the failure of Count III to describe the forged check made that count so vague and indefinite that it failed to charge an offense against the United States. Since a photocopy of the check allegedly forged, possessed, and uttered by the appellants was incorporated in the indictment immediately above Count III, the identity of the check referred to in Count III was not in doubt. Any error in failing to describe it in detail was harmless.

For the reasons stated above, the verdicts and convictions appealed from are

Affirmed.

---

2. The Judge instructed:
"To constitute the crime charged in the indictment there must be joint operation of two essential elements, the act committed and intent. Before the Defendant may be found guilty the prosecution must establish beyond a reasonable doubt under the statutes that he intentionally committed the act, the crime charged in this case. The crimes that are charged in this case are serious crimes which require proof of specific intent before the Defendant can be convicted. Specific intent, as that term means the Government must prove the Defendant knowingly did an act which the law forbids, purposely, intending to violate the law. Now such an intent may be determined from all the facts and circumstances surrounding the case.
"An act or failure to act is knowingly done if done voluntarily and intentionally and not because of mistake or accident or other innocent reason."