UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas GALLAGHER,
Defendant-Appellant.

No. 77–1341.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1977.

Decided Nov. 28, 1977.

Richard E. Gorman, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., James D. Henderson, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, SPRECHER, and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The defendant, Thomas Gallagher, was indicted on March 7, 1976, along with John D. Rasco, in a one count indictment, charging Gallagher with having aided and abet-

ted Rasco in Rasco's possession of 110 certificates of Westinghouse Electric Corporation common stock of a value in excess of $100 which were known to have been stolen from an interstate shipment, in violation of 18 U.S.C. §§ 659[1] and 2.[2] Rasco pleaded guilty. Gallagher was found guilty in a bench trial and sentenced to three years in the custody of the Attorney General.

The facts were stipulated in part and otherwise are not in serious dispute. The issue is whether under those facts Gallagher could properly be found guilty of the particular crime charged, aiding and abetting Rasco in his possession of the stolen certificates.

The facts must therefore be examined. Besides Rasco and Gallagher, two others were involved in the transaction, James Wilson and an undercover FBI agent. Wilson and Gallagher had previously formed a partnership relationship, but unbeknownst to Gallagher, Wilson had become an FBI informant. In July 1975, Wilson and Gallagher met Rasco by chance in a Chicago restaurant. Gallagher had been previously acquainted with Rasco. Both Rasco and Wilson had criminal records. During the conversation among the three, Gallagher and Wilson mentioned that a transaction they were interested in had just fallen through, but that their prospective buyer in that transaction was still in town. Rasco then commented that he possessed about $1,900,000 in Westinghouse securities and knew where to obtain more in the event that Gallagher and Wilson's buyer might be interested in a different venture. Rasco confirmed that another person had gone to the penitentiary in connection with those securities. The stolen status of the securities was understood. Wilson stepped to a phone to call the prospective buyer, who in fact was the undercover FBI agent but was known as such only to Wilson. After that call, Wilson reported the buyer's interest to Rasco and Gallagher who, during that phone call, had agreed on terms for the sale. For the purchase price, Gallagher and Wilson agreed to pay to Rasco 10% of the market value of the certificates to be passed on by Rasco to his source for the securities, and in addition to pay Rasco 25% of Gallagher and Wilson's anticipated profit also to be figured at 10% of the market value of the securities. Gallagher then suggested to Wilson that Wilson go with Rasco to Rasco's home to verify that Rasco did in fact possess the securities. Wilson accompanied Rasco to his home where Rasco showed the securities to Wilson and confirmed that they had been stolen. Rasco and Wilson further discussed the financial arrangements and agreed to close the sale on Monday, it then being Friday. Later Wilson met alone with Gallagher who urged that the sale be closed instead on Saturday. Gallagher attempted to arrange the closing for Saturday, but it was left for Monday as Wilson advised that the buyer could not be ready before that time. On Sunday Gallagher again contacted Wilson to urge a different plan for the closing. On Monday, however, at the appointed time Gallagher went to the restaurant where he met Rasco.

---

1. 18 U.S.C. § 659 provides in pertinent part:

Whoever embezzles, steals or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any pipeline system, railroad car, wagon, motortruck, or other vehicle, or from any tank or storage facility, station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property; or

Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen;

\* \* \* \* \* \*

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; but if the amount or value of such money, baggage, goods or chattels does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

2. 18 U.S.C. § 2 provides in pertinent part:

(a) Whoever commits an offense against the United State or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Wilson arrived with the "buyer" who sat apart at the bar as Wilson joined Gallagher and Rasco.

Rasco, Gallagher, and Wilson again went over the financial arrangements. Gallagher suggested that they move from the restaurant to his girl friend's apartment as it would be safer. Wilson said he would see if that change in plans was agreeable with the buyer. Wilson went to the "buyer" who advised Wilson to determine if Rasco actually had the securities with him. Wilson returned to Rasco and Gallagher, and Rasco then showed Wilson and Gallagher the securities in his briefcase. The possession of the securities by Rasco being verified, Rasco and Gallagher were immediately arrested by the FBI.

It is clear from the facts that neither Gallagher nor Wilson had anything to do with the acquisition of the securities by Rasco, nor did Gallagher or Wilson ever physically have the securities in their possession. Rasco at all times kept actual possession of the securities. In view of that evidence, it was recognized at trial as a serious question as to whether or not Gallagher could properly be found to have aided and abetted Rasco's admittedly unlawful possession. Counsel for the government urged the theory that the only useful incident of Rasco's possession of the stolen securities was their ultimate disposition at a profit, thus the aborted sale was an element of possession attributable to Gallagher. Therefore, as Gallagher aided and abetted in the attempted sale, which failed only because the "buyer" was an undercover FBI agent, Gallagher, the government argues, was guilty of aiding and abetting Rasco's possession and became a joint venturer with him in the possession.

Counsel for Gallagher concedes that Gallagher may have been a willing buyer of stolen securities but points out that Gallagher was not charged with buying or receiving; Gallagher's purpose, his counsel argues, was not to aid Rasco in his possession but was to "dispossess" Rasco of the securities so that Gallagher and his partner, Wilson, could in turn sell them to their buyer

for their own profit. The trial judge, however, decided that Gallagher's attempt to relieve Rasco of his possession of the securities by the proposed sale made Rasco's possession valuable and meaningful, and thus Gallagher aided and abetted Rasco in possession.

To support its theory the government relies on *United States v. Bartemio*, 547 F.2d 341 (7th Cir. 1974); *United States v. Untiedt*, 493 F.2d 1056 (8th Cir. 1974), *cert. denied*, 419 U.S. 862, 95 S.Ct. 115, 42 L.Ed.2d 98; *United States v. Greer*, 467 F.2d 1064 (7th Cir. 1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590; *United States v. Romero*, 495 F.2d 1356 (5th Cir. 1974), *cert. denied*, 419 U.S. 995, 95 S.Ct. 307, 42 L.Ed.2d 267; *United States v. McCarthy*, 473 F.2d 300 (2d Cir. 1972); and *United States v. Holland*, 144 U.S.App.D.C. 225, 445 F.2d 701 (1971).

In *Bartemio, supra*, the defendant argued that since the evidence against him as an aider and abettor in the possession of stolen securities was highly circumstantial, his "mere association" with the guilty parties was insufficient to convict him. That evidence, however, showed, among other things, that Bartemio was the driver of the car and took the seller of the stolen bonds to meet her source to acquire the bonds, and then drove her to the place where the sale was to occur. The evidence of Bartemio's involvement with these securities does not suggest that he may have been a prospective buyer from his passenger or a broker arranging a sale to his own client. The facts do not show in the present case, as in *Bartemio*, that Gallagher had any participation at the time Rasco acquired the securities or actually and physically assisted Rasco in possession.

*Untiedt, supra*, is easily distinguishable on the facts. There, as in *Bartemio, supra*, the defendant had some participation in the acquisition of the stolen property. Prior to the hijacking of a truck, the defendant agreed to assist his cohorts in the planned hijacking by helping to unload the contents of the hijacked truck after it was seized. Untiedt was present at the time and place for that purpose.

In our consideration of *Greer, supra,* we fail to find any support for the government's position, quite the contrary. In that stolen property case, Greer's participation "was limited to triggering the theft by providing the thieves with information about the copper." The government, nevertheless, charged Greer with the subsequent transportation of the stolen copper in interstate commerce, actually accomplished by others, on the theory that as an "aider or abettor" he was responsible not only for the immediate acts he facilitated, but for other likely consequences of his acts. The court found that Greer's participation was limited to the one preliminary stage of the criminal conduct, and that he was therefore not guilty of aiding and abetting the subsequent interstate transportation. *Greer,* as here, was a case which considered the issue of how far accomplice liability can be extended to include crimes other than the one the accomplice immediately aided. In *Greer,* the aiding and abetting preceded the subsequent crime committed by others, whereas in the present case, the crime of Rasco's possession had already occurred without any help from Gallagher. There, and particularly in the present case, we think the government's standard for one who aids and abets a crime is overly broad. See also *Bollenbach v. United States,* 326 U.S. 607, 611, 66 S.Ct. 402, 90 L.Ed. 350 (1945).

■ *Romero, supra,* enunciates the generally acceptable proposition that possession may be constructive and that a defendant may be guilty of possession even though he never had physical possession. The facts in that case were appropriate for the application of that principle. There all three defendants actually participated together in the common enterprise of finding a place to cash the stolen checks which one of them had initially acquired. It cannot be fairly asserted from the evidence that Gallagher did or at any time could have exercised any dominion or control over the securities Rasco possessed. Rasco had the bonds and Gallagher and Wilson had the supposed buyer, and they endeavored to do business with each other. Those negotiations did

not dispossess Rasco in whole or in part or cause him to share possession or control with Gallagher in any degree. Rasco's control was and remained independently and completely his in relation to Gallagher and Wilson. As in *United States v. Wainer,* 170 F.2d 603 (7th Cir. 1948), only more so, the "control was too fleeting and shadowy to amount to possession."

■ Likewise, in *McCarthy, supra,* the defendant charged with aiding and abetting was found to be more involved, as the evidence showed he had played an active part from the beginning in the truck hijacking.

*Holland, supra,* is a narcotics case in which the defendant's conviction for possession was reversed. The narcotics had been found in a woman's apartment when the defendant was present. The prosecution was based on the theory of constructive possession, but the court found that the evidence did not show dominion and control over the narcotics by the defendant and held that dominion and control should not be lightly imputed.

The defendant calls our attention to *United States v. Peoni,* 100 F.2d 401 (2d Cir. 1938), which this court noted in *Greer, supra.* See also *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1948). In *Peoni* at 402, Judge Learned Hand stated that aiding and abetting requires that the defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." The analysis of the evidence for the application of the rule may at times be somewhat difficult. In our zeal, however, to cause a conceded wrongdoer to be convicted, we must guard against vague and broad judicial extensions of the statute premised only upon imaginative and recondite theories. The crime charged clearly must be the crime committed. Since Gallagher obviously did not buy or receive the securities because of the timing of his arrest which occurred before the transaction was concluded, the government has attempted to snare the wrongdoer by

stretching the only remaining possibility of § 659, possession, by blending it through its theory of relationship with § 2.

The determination and application of the criminal law must not be permitted uncertainty if it is to be fairly administered. We all respect the ancient rule stated by Chief Justice Marshall in *The Schooner Hoppet & Cargo v. United States*, 11 U.S. (7 Cranch) 389, 394, 3 L.Ed. 380 (1813):

The rule that a man shall not be charged with one crime and convicted of another, may sometime cover real guilt, but its observance is essential to the preservation of innocence. . . .

We believe that rule governs this case.

Finding Gallagher not to have been in actual or constructive possession of the stolen securities, nor to have aided and abetted Rasco in his possession, we need not reach the other issues raised on appeal.

REVERSED.