899 F.2d 15
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bryan SLAYTON, Defendant-Appellant.
 No. 89-5918.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1990.
 
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and PAUL V. GADOLA, District Judge.*
 PER CURIAM.
 
 
 1
 Bryan Slayton appeals the sentence imposed by the trial court following his guilty plea to distribution of cocaine and conspiracy to traffic in cocaine. He makes three arguments on appeal. First, he contends that he was deprived of an adequate opportunity for allocution because he feared self-incrimination. Second, he asserts that the government, at sentencing, attempted to prove his involvement with four more ounces of cocaine than were listed in the presentence report, thus violating his right to due process. Third, he argues that the court improperly increased his offense level for being a leader, manager, or organizer of the conspiracy. Finding no error in the sentence imposed by the district court, we affirm.
 
 
 2
 * In approximately November 1988, Bryan Slayton sold Mark Singleterry and Lindy Flemister a total of twelve ounces of cocaine. Singleterry and Flemister saw Slayton sell nine ounces of cocaine to Robert Ford on another occasion. On this occasion, they noticed that Slayton had a semi-automatic pistol on the table where he stacked money from the transaction. During this period of time, Slayton was also giving Darren Johnson one to two ounces of cocaine per week for distribution and return of proceeds.
 
 
 3
 On December 15, Singleterry and Flemister were arrested by Alcohol, Tobacco and Firearms agents and Hamilton County Sheriffs. Flemister began cooperating with these officials, and named Slayton as his supplier. On January 12, 1989, Flemister made a controlled purchase of one ounce of cocaine from Slayton.
 
 
 4
 On January 18, 1989, Flemister, under the direction of law enforcement officials, contacted Slayton for the purchase of three ounces of cocaine. Slayton indicated that he personally had only one ounce, but would contact Ford to see whether he could obtain two additional ounces. Slayton later contacted Flemister and confirmed that the deal had been set up; they were to meet later that night.
 
 
 5
 At the meeting, Flemister walked toward Slayton and Ford, who were standing together. As Flemister walked toward the two men, Albert Culberson (who, unbeknownst to Flemister, was working for Slayton and Ford) approached and followed him. Flemister, still followed by Culberson, began negotiating with Slayton; Slayton directed him to negotiate with Ford. Flemister purchased two ounces of cocaine, which Culberson then handed him. ATF agents and the Sheriffs moved in for the arrest.
 
 
 6
 A grand jury returned a six-count indictment against Slayton. Count 1 charged Slayton with conspiracy to traffic in cocaine, in violation of 21 U.S.C. Sec. 846. Count 3 charged him with distribution of cocaine on January 18, 1989, in violation of 21 U.S.C. Sec. 841(a)(1). Pursuant to a plea agreement, Slayton pled guilty to Counts 1 and 3; the remaining counts were dismissed at sentencing. The district court then referred Slayton's case to the probation office for preparation of a presentence report.
 
 
 7
 The presentence report set a base offense level of 26, reflecting twenty-five ounces of cocaine distributed by Slayton. U.S.S.G. Sec. 2D1.1(a). In particular, Singleterry and Flemister purchased twelve ounces from him in November 1988. He sold nine ounces to Ford around this time, and one ounce to Flemister on January 12, 1989. Further, he offered three ounces to Flemister on January 18.
 
 
 8
 Slayton possessed a firearm during these sales, and thus two additional points were added to his offense level pursuant to U.S.S.G. Sec. 2D1.1(b). The probation office also found that Slayton was an organizer, leader, manager or supervisor in the conspiracy, and added two more points pursuant to U.S.S.G. Sec. 3B1.1(c). Thus, Slayton had an offense level of 30, which, given his criminal history category of I, indicated a sentencing range of between 97 and 121 months.
 
 
 9
 The court held a sentencing hearing on June 16, 1989. At the sentencing hearing, Slayton was offered the opportunity for allocution prior to imposition of the sentence. See Fed.R.Crim.Pro. 32(a)(1)(C). He refused to speak, citing the fifth amendment; he feared that he might face further prosecution for these activities if he spoke about them. He also contended that the government presented evidence at the sentencing hearing that it had not mentioned in the presentence report, in violation of his due process rights. The district court sentenced him to 109 months. Slayton timely appealed.
 
 II
 
 10
 The defendant in the sentencing phase of a criminal trial has the right to address the court both to refute information presented by the government and to attempt to mitigate his punishment. See Fed.R.Crim.Pro. 32(a)(1)(C). A court's failure to comply with this rule may constitute reversible error. United States v. Miller, 849 F.2d 896 (4th Cir.1988). In reviewing the transcript of the sentencing hearing, we find that the district court gave Slayton an opportunity for allocution. Slayton contended in the district court and on appeal that his fear of incriminating himself during allocution (with the possibility of further prosecution) deprived him of an adequate opportunity for allocution. We find this argument without merit.
 
 
 11
 As an initial matter, it is not clear that Slayton had a fifth amendment right against self-incrimination at the sentencing hearing. See United States v. De La Paz, 698 F.2d 695 (5th Cir.1983). In any event, the fifth amendment protects defendants only from compelled self-incrimination. Even accepting Slayton's argument that his fear of self-incrimination removed any true ability to exercise the choice of allocution, we do not find that such a constraint rises to the level of compulsion required by the fifth amendment. See Jenkins v. Anderson, 447 U.S. 231, 236 (1980); Chaffin v. Stynchcombe, 412 U.S. 17, 30 (1973).
 
 III
 
 12
 Slayton argued in the district court and on appeal that the government introduced evidence of four additional ounces of cocaine attributable to him which were not listed in the presentence report. He asserts that the government did not give him notice about this additional evidence, and that it thus deprived him of his due process right to present an adequate defense. Memphis Light, Gas and Water Division v. Willie S. Craft, 436 U.S. 1 (1978).
 
 
 13
 Slayton's argument here, however, is premised on an incorrect factual basis. The government did account for all 25 ounces of cocaine in the presentence report. Accordingly, it could not have violated Slayton's right to due process. Thus, we need not address Slayton's argument that the government's failure to list in the presentence report all the cocaine involved deprived him of this right.
 
 IV
 
 14
 The district court found that Slayton was an organizer, leader, manager, or supervisor in the distribution of cocaine. Thus, it increased his offense level by two points. U.S.S.G. Sec. 3B1.1(c). Slayton argued in the district court and on appeal that this determination is clearly erroneous. He contends that he sold only small amounts, had no authority or control over his purchasers, and received no kickbacks from them. He states that a mere purchase of cocaine does not make either the seller or the buyer guilty of conspiracy to sell cocaine, citing United States v. Manzella, 791 F.2d 1263, 1265 (7th Cir.1986).
 
 
 15
 We find that the offense level increase imposed by the district court was not clearly erroneous. On January 18, 1989, Slayton organized the transaction, contacted the participants, and supervised the distribution of the three ounces. During this transaction, Slayton supervised Culberson. Darren Johnson was also distributing drugs for Slayton. All these facts, taken together, support the offense level increase imposed by the district court.
 
 V
 
 16
 For the foregoing reasons, we affirm the sentencing determination of the district court in all respects.
 
 
 
 *
 The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation