UNITED STATES of America, Plaintiff–Appellee,

v.

William JONES, Jesse Owens, and Leonard Tolliver, Defendants–Appellants.

Nos. 90–3498, 90–3541 and 90–3602.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 15, 1991.

Decided Dec. 19, 1991.

Darilynn J. Knauss, Asst. U.S. Atty., Peoria, Ill., Rodger A. Heaton, Asst. U.S. Atty., argued, Springfield, Ill., for the U.S.

Ronald E. Halliday, argued, Parker & Halliday, Peoria, Ill., for William Jones.

Sharon G. Kramer, argued, Chicago, Ill., Frank Picl, Peoria, Ill., for Jesse Owens.

William R. Kelly, argued, Kelly & Brady, Peoria, Ill., for Leonard Tolliver.

Before CUMMINGS, WOOD, Jr., and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This case consolidates the appeals of defendants Jesse Owens, Williams Jones and Leonard Tolliver. Owens and Jones were tried together, and the jury convicted both Owens and Jones of conspiring to commit bank robbery in violation of 18 U.S.C.A. § 2113(a), (d) (West 1978 & Supp.1990). The jury additionally convicted Owens of soliciting Tolliver to help commit the robbery in violation of 18 U.S.C.A. § 373 (West Supp.1990). Tolliver did not go to trial. He pleaded guilty to soliciting Jones to help commit bank robbery. The judge sentenced Owens to 200 months in prison, and Tolliver received a 72–month sentence. These three defendants raise various issues on appeal.

Jones argues that there was insufficient evidence for the jury to find him guilty of conspiring to rob a bank. Jones argues further that even if there was sufficient evidence for the jury to convict him, the government did not present sufficient evidence for the jury to reject his entrapment defense. Owens similarly contends that the government did not prove beyond a reasonable doubt that he was not entrapped. And Owens appeals his sentence, arguing that the court erred in allowing a two-point increment for obstruction of jus-

tice to be added to his base offense level. Tolliver challenges only his sentence, raising two issues. First, he asserts that the 72–month sentence he received pursuant to the federal sentencing guidelines for soliciting Jones to participate in a bank robbery violates the Eighth Amendment's prohibition against cruel and unusual punishment. Second, Tolliver argues that the court erroneously applied the guidelines in raising his base offense level several points after the court determined that the robbery plan included a weapon and provided for abduction of a person to facilitate the crime.

We affirm both Owens's and Jones's convictions, and we affirm the sentences imposed by the district court.

## FACTUAL BACKGROUND

During Owens's and Jones's trial, evidence was presented indicating that in November 1989 Jesse Owens was an inmate at Hill Correctional Center. Gerald Williams was incarcerated there as well. Williams was placed in a cell next to Owens. At trial, Williams testified that Owens told Williams he was planning to rob several small banks in southern Illinois when he was released. Owens was scheduled to be released from prison in September 1990. Williams told Owens that he was taking a chance on these smaller banks because such robberies might evince a "pattern." Williams suggested to Owens that he should rob one bank, American Savings and Loan, in Pekin, Illinois instead of several smaller banks. Williams stated that he knew the manager of American Savings and Loan and that the robbery could produce ten million dollars. Williams and Owens discussed a plan for the robbery daily in Williams's room. According to Williams, they discussed it at least 500 times.

In December 1990, Williams came to believe that the robbery plan he and Owens discussed daily had risen above mere "prison talk," so he called the state police in Springfield on December 18, 1990, and informed them of the plan. Williams then met with the police the next day to discuss

details of the proposed robbery. Williams told the officers that Owens was going to locate assistants in Chicago, as well as acquire a van, a car, money, portable phones, or anything else necessary to the operation from a friend in Florida. Williams also said that Owens would arrange for the car and van to be altered so that they would look like Drug Enforcement Administration vehicles to aid in a getaway. On the night of the robbery, Williams was supposed to take his friend, Al Bottin, whom Williams believed to be the manager of American Savings and Loan, out for a few drinks. At a designated hour, Owens and his crew would show up at the lounge. Williams was to bring Bottin out of the lounge so that he and Bottin could be abducted and taken back to the bank. Bottin would then be forced to open the bank; the money would be stolen; and Owens and his crew would leave the scene in the "DEA" vehicles after handcuffing Williams and Bottin inside the bank. Owens was to give Williams his share of the money when everything "cooled down." Williams also told the officers that the robbery plan included using weapons to aid in the getaway.

On January 8, 1990, Williams again met with state officers. At this time he agreed to work with the authorities as a government informant. The officers gave Williams a phone number to give to Owens so that conversations between the two men and other persons involved in the scheme could be recorded after Williams was released from prison. Following the two meetings with the state officers, Williams continued to discuss with Owens plans for robbing the American Savings and Loan until his release. Williams was released in February 1990.

In January 1990, Owens wrote to his friend, Leonard Tolliver, and told him to contact Williams after Williams was released. Williams arranged through Owens for Tolliver to call him on February 13, 1990, at the phone number given to him by the state authorities. On the planned date, a three-way conversation took place between Williams, Tolliver and Owens; the conversation was recorded. There was an-other recorded conversation between Tolliver and Williams on February 20, 1990, but Owens did not participate. During both conversations, the parties proposed that Tolliver meet Williams in March 1990 in order to have a look at the bank, whose name, as Williams informed Tolliver and Owens, was no longer American Savings and Loan, but Olympic Federal Bank.

Subsequent to the February 1990 phone calls, Williams attempted to contact Tolliver three times in order to set up a meeting date in East Peoria—with no success. Finally, Williams reached Tolliver, and Tolliver arranged to borrow a car and meet Williams at the Holiday Inn in East Peoria, Illinois. Tolliver brought William Jones along to meet Gerald Williams. Williams, Tolliver and Jones met in a hotel room that government agents had reserved. Williams was wearing a body recorder which the FBI placed on him so that conversations between the three men could be recorded. In the hotel room, Tolliver and Jones examined a map of the area around Olympic Federal provided by Williams, and they looked at a picture of the bank that Williams had brought. The three men also discussed the robbery plan. During the conversations, Williams laid out the details of the robbery plan, and the other two men indicated their agreement with that plan. After discussing the plans, Williams suggested that the group take a trip to Pekin, Illinois to look at Olympic Federal. The group had already arranged to go to Hill Correctional in Galesburg to visit Owens after the meeting, but Williams claimed that the bank was on the way to Galesburg, Illinois. In fact, Galesburg is approximately 50 miles northwest of East Peoria, Illinois, while Pekin is about 15 miles southwest of the town. Tolliver and Jones, Chicago natives, did not know that Pekin was not on the way to Hill Correctional, but they agreed to go to Pekin anyway. Williams, Tolliver and Jones drove in Williams's car to Olympic Federal Bank and inspected it.

After looking at the bank, Williams drove to Galesburg where Tolliver and Jones visited Owens in Hill Correctional

Center. On the way back to the hotel in East Peoria, Williams, Tolliver and Jones discussed the robbery plans, including such details as destroying the van, cars and clothing used during the robbery by burning them and referring to each other by numbers instead of by name during the commission of the crime. Tolliver and Jones were arrested as soon as they arrived at the Holiday Inn in East Peoria. Jesse Owens was arrested the following day at Hill Correctional Center.

## DISCUSSION

Jones contends that there was not sufficient evidence for the jury to conclude beyond a reasonable doubt that he participated in a conspiracy to violate 18 U.S.C.A. § 2113(a), (d) and (e) (West 1978 and Supp. 1991), the federal offenses of bank robbery, assault of a person in commission of the crime, and kidnapping to avoid apprehension in commission of crime. Jones maintains that the government did not prove he agreed to commit the robbery or that he participated in some overt act in furtherance of the offense.

■ In reviewing a challenge of a conviction for insufficiency of the evidence, this court will overturn a jury's verdict only if no rational juror could have found that each element of the offense was established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Ocampo*, 890 F.2d 1363, 1370 (7th Cir. 1989). In making this determination, the court views all of the evidence in a light most favorable to the government. To prove conspiracy the government must establish that there was agreement between two or more persons to commit an unlawful act, that a defendant was party to the agreement, and that an overt act was committed in furtherance of the agreement by one of the coconspirators. *United States v. Sababu*, 891 F.2d 1308, 1322 (7th Cir. 1989) (citations omitted). Jones argues that the government did not show he was a participant in the conspiracy. At most, he says, there is evidence that he merely participated in a conversation concerning nebu-

lous plans for a crime. Jones says such talk is "cheap."

■ Recently, in *United States v. Durrive*, 902 F.2d 1221, 1229 (7th Cir.1990), this court held that there must be "substantial evidence" of a defendant's participation in a conspiracy, viewing the evidence in the light most favorable to the government, in order to support a conviction. In meeting its burden, "the government need not establish that there existed a formal agreement to conspire; circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship between the parties, their overt acts, and the totality of their conduct may serve as proof." *United States v. Redwine*, 715 F.2d 315, 320 (7th Cir.1983), *cert. denied, Strong v. United States*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). Evidence of mere association with conspirators does not support a conviction of conspiracy. *United States v. Baker*, 499 F.2d 845, 848 (7th Cir.1974), *cert. denied, Felts v. United States*, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974).

■ Jones alleges that he was an "innocent bystander who took a ride down to Peoria [with Tolliver]." However, the government presented evidence at trial demonstrating that Jones was more than an innocent bystander. Upon his arrival at the hotel room in East Peoria, Jones discussed the robbery plans with Williams and Tolliver. Jones made marks on the map of the area around the bank that Williams showed him. Jones was in Williams's car when the group drove to Pekin to look at Olympic Federal, and, on the trip back to the hotel after visiting Jesse Owens, Jones repeatedly referred to himself as one of the group, making numerous comments concerning the robbery plans during further discussion of the conspiracy. In short, the evidence establishes that Jones's intent to join the conspiracy was " 'more than knowledge, acquiescence, carelessness, indifference, lack of concern,' but rather [was] 'informed, and interested cooperation, stimulation, instigation.' " *United States v. Gabriel*, 810 F.2d 627, 634 (7th Cir.1987) (quoting *Direct Sales Co. v. United States*,

319 U.S. 703, 713, 63 S.Ct. 1265, 1270, 87 L.Ed. 1674 (1943)). Moreover, the evidence discussed above also establishes that Jones committed at least one overt act in furtherance of the conspiracy, and more probably, several.

The fact that there was sufficient evidence for the jury to find that William Jones was a participant in the conspiracy to rob Olympic Federal Bank is not enough to affirm his conviction. Jones also argues that the government did not present sufficient evidence to support the jury's rejection of his entrapment defense. Viewing the evidence in the light most favorable to the government, as we must in reviewing Jones's claim, *see United States v. Gabriel,* 810 F.2d 627, 637 (7th Cir.1987), we affirm the jury's decision.

In *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), the Supreme Court held that a defendant is entitled to an entrapment instruction even if the defendant denies one or more elements of the crime whenever there is sufficient evidence from which a reasonable jury could find entrapment. In this case, Jones denied participating in the conspiracy to rob Olympic Federal Bank, and he did not testify at trial. The district court believed that there was sufficient evidence for the jury to receive an entrapment instruction with respect to Jones.

■ A valid entrapment defense has two elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Mathews,* 485 U.S. at 63, 108 S.Ct. at 886–87; *United States v. Marren,* 890 F.2d 924, 929 (7th Cir.1989). Although some courts view the entrapment defense as focusing exclusively on the government's conduct, courts in the Seventh Circuit continue to determine whether a defendant is predisposed to commit the crime that the government agent may have induced the defendant to commit. *See United States v. Evans,* 924 F.2d 714, 716 (7th Cir.1991). In evaluating the defendant's predisposition to commit the crime, we look to the defendant's state of mind before his initial exposure to government

agents. *Marren,* 890 F.2d at 930. The following factors are relevant to a defendant's predisposition: (1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced a reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government. *Marren,* 890 F.2d at 930 (citations omitted). The most important factor for the court to focus upon is the defendant's reluctance to commit the offense. *United States v. Perez–Leon,* 757 F.2d 866, 871 (7th Cir.1985), *cert. denied,* 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985). Such reluctance is a good indicator that the government's actions motivated the defendant to commit the offense, thereby removing culpability from the defendant.

■ There was evidence presented at trial which adequately supports the jury's rejection of Jones's entrapment defense. As to predisposition, Jones argues that no proof of his knowledge of or willingness to participate in the conspiracy was shown. However, the jury saw a videotape of Jones, Tolliver and Williams in a hotel room in East Peoria discussing the details of a scheme to rob Olympic Federal Bank, and the jury could reasonably have concluded from it that Jones was predisposed to participate in the conspiracy. With respect to government inducement, Jones's claim is very weak. At trial, an officer with the Illinois State Police Division of Criminal Investigation recounted a conversation between Tolliver and Owens in which Tolliver mentioned that Jones travelled to East Peoria at Tolliver's request. Moreover, Owens wrote a letter to Tolliver in which he emphasized that Jones had to be right for the operation. In addition, Williams testified that he never met Jones before the March 14 meeting in East Peoria. A reasonable jury could conclude from this evidence that Jones willingly chose to become involved in

**1315**

the conspiracy *before* he met Williams, the government agent.

Thus, we affirm Jones's conviction for conspiracy to rob a bank in violation of 18 U.S.C.A. § 2113(a), (d). There was sufficient evidence for a jury to find, beyond a reasonable doubt, that Jones was guilty of each element of the crime and that the government did not entrap him.

■ Owens challenges, like Jones, the jury's rejection of his entrapment defense as to his convictions for conspiring to rob a bank and soliciting Tolliver to participate in the conspiracy. As we have already explained, we give much deference to the jury's decision on review: the jury's verdict will not be overturned unless no reasonable juror could have found beyond a reasonable doubt that Owens was not entrapped. *United States v. Gabriel*, 810 F.2d 627, 637 (7th Cir.1987). With this in mind, we turn to Owens's assertions.

Owens claims that the jury could not have possibly concluded that he was predisposed to conspire to rob Olympic Federal, because it was Jerry Williams who first approached him with the bank robbery plan when they were both incarcerated at Hill Correctional Center. Owens argues that the evidence shows he was induced by the government because Williams offered him the extraordinary enticement of 10 million dollars, supposedly the expected loot from the bank robbery, to participate in the scheme. Owens argues further that Williams was well paid for his endeavors and that the government did not bother to corroborate its well paid informant's testimony at trial, despite many opportunities to do so. In short, Owens maintains that the government did not meet its burden of proving beyond a reasonable doubt that he was not entrapped because the testimony of the government's paid informant is incredible.

■ Owens's argument fails, however. This court consistently has held that in a swearing contest, the jury's choice of whom to believe is conclusive on the appellate court unless the factfinder credits *exceedingly* improbable testimony. *United States v. Cardona–Rivera*, 904 F.2d 1149,

1153 (7th Cir.1990). The jury chose to believe Williams's testimony that it was Owens who first approached Williams with the idea of robbing banks in southern Illinois. This testimony along with Williams's further testimony concerning Owens's development of the details of the scheme is enough to establish Owens's predisposition to commit the offense. Moreover, viewing the evidence in a light most favorable to the government, the government established a basis upon which a reasonable jury could conclude that Owens was not induced by a state agent to commit the crime. When Williams was moved to a cell next to Owens in November 1989, and the two men commenced daily discussion of a plan to rob a bank in Pekin, Illinois, Williams was not a government agent. Williams did not approach government officials until December 18, 1989. Thus, even if Williams had induced Owens to make statements regarding a plan to rob Olympic Federal during their numerous conversations at Hill Correctional, he was not a government agent at the time. There is no defense of private entrapment. *United States v. Manzella*, 791 F.2d 1263, 1269 (7th Cir.1986). "Private entrapment is just another term for criminal solicitation, ... [and] the person who yields to the solicitation and commits the crime is guilty of that crime." *Id.* We conclude that there was ample evidence for the jury to find beyond a reasonable doubt that Owens was not entrapped. So, we now turn to Owens's arguments regarding his sentence.

■ Owens protests the two-point enhancement of his base offense level for obstruction of justice under U.S.S.G. § 3C1.1 as clearly erroneous. Section 3C1.1 states: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." Owens argues that he received the enhancement because his testimony that Jones did not intend to participate in the conspiracy, a conclusion he reached after meeting Jones at Hill Correctional on March 14, 1991, conflicted with

the jury's conviction of Jones for conspiracy. Owens maintains that the enhancement is unfair because he testified only as to his perception of Jones's feeling; such testimony, Owens says, does not amount to perjury. Moreover, Owens points out that § 3C1.1 Application Note 2 states: "In applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant." If this Application Note were applied in the fashion that Owens suggests, the court would never apply the enhancement, for viewing the evidence in the manner Owens proposes would mean always resolving swearing contests in favor of the defendant. Recently, the Court of Appeals for the Fourth Circuit perceived a conflict between § 3C1.1 and the Fifth Amendment. *United States v. Dunnigan*, 944 F.2d 178 (4th Cir.1991). The *Dunnigan* court reasoned that § 3C1.1 imposed an intolerable burden upon a defendant's constitutional right to testify on her own behalf.[1] Prior to the *Dunnigan* decision, however, this court held § 3C1.1 does not infringe any constitutionally protected right when applied to increase the sentence of a defendant who testifies untruthfully at trial. *United States v. Contreras*, 937 F.2d 1191 (7th Cir.1991). We continue to adhere to our decision in *Contreras*.

■■■ Owens ignores the fact that Judge Mihm based the two-point enhancement on either of two theories, the second of which was advanced by Owens's own counsel. Owens testified that Williams first approached him with a robbery plan, while Williams testified to the opposite. Judge Mihm stated that this head-on confrontation indicated Owens perjured himself, thus justifying the two-point enhancement. We agree with Judge Mihm that either the direct conflict between Williams's and Owens's testimony or the indirect conflict between Owens's testimony that Jones was not going to be involved in the conspiracy and Jones's statements recorded in the car

after meeting with Owens more than justified the enhancement. The district court's application of the obstruction of justice enhancement was not clearly erroneous; therefore, we will not disturb it. *United States v. Osborne*, 931 F.2d 1139, 1153 (7th Cir.1991).

Similarly, we will not disturb Tolliver's sentence unless the district court's resolution of factual issues supporting the base offense level is clearly erroneous. In calculating Tolliver's sentencing guideline range, the court added eight points for Specific Offense Characteristics: four points for abducting a person pursuant to U.S.S.G. § 2B3.1(b)(4)(B) and four points for use of a weapon pursuant to U.S.S.G. § 2B3.1(b)(2)(B). Tolliver contends that the court must pile "speculation upon speculation" in order to add these points. Tolliver argues that it is an intolerable situation when police authorities are allowed to control defendants' prison sentences based on the creativity of their imaginations. Tolliver posits the following hypothetical to illustrate his point: had Jerry Williams in this case proposed that a firearm be discharged during the course of the robbery, or that the bank manager be seriously injured, or that the bank manager be permanently injured, a total of nine points could have been added to Tolliver's sentence. *See* U.S.S.G. § 2B3.1(b)(2)(A), (b)(3)(B), (b)(3)(C) (Nov. 1, 1990). (The total of these sections is 15; however, the guidelines direct that the cumulative adjustments from these provisions be no more than 9 levels.)

■■■ Tolliver correctly states that in computing the base offense level for solicitation the court should not add levels for speculative specific offense characteristics. U.S.S.G. § 2X1.1, comment. (n. 2). However, the guidelines specifically address the instant situation. "[I]f two defendants are arrested during the conspiratorial stage of planning an armed bank robbery, ... the offense level would simply reflect the level

---

**1.** We also note *United States v. Taggart*, 944 F.2d 837 (11th Cir.1991), in which the court held that it is not clear error for the sentencing court to decide, against the recommendation of the probation officer and a request by the government, not to apply the obstruction of justice enhancement even when there were apparent contradictions in defendant's trial testimony. The court cited § 3C1.1 Application Note 2 as a reason for its affirmation of the district court's decision.

applicable to robbery of a financial institution, with the enhancement for possession of a weapon. If it was established that the defendants actually intended to physically restrain the teller, the specific offense characteristic for physical restraint would be added." *Id.* There was ample evidence presented at trial for the court to conclude that a firearm would be used during the robbery, and that the conspirators planned to abduct the bank manager in order to get the keys to the bank vault. That the robbery never actually took place is irrelevant to the district court's computation and does not change the evidence into mere speculation. Accordingly, we find that Judge Mihm did not erroneously decide to add the specific characteristic points to Tolliver's base offense level.

■ Last, Tolliver attacks the constitutionality of his sentence. Specifically, he claims that his 72–month sentence for soliciting Jones to participate in the bank robbery conspiracy violates the Eighth Amendment's prohibition of cruel and unusual punishment because the solicitation offense carries the same base offense level as the actual commission of the crime. The Supreme Court has held that the Eighth Amendment contains a general proportionality guarantee, but Tolliver's sentence for solicitation in this case does not violate it. *See, for example, United States v. Contreras,* 937 F.2d 1191, 1195 n. 3 (explaining that in *Harmelin v. Michigan,* — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), Justice Scalia opined that the Eighth Amendment contains no proportionality guarantee, but a firm majority of the Court, seven justices, believe that there is some type of proportionality guarantee under *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). The Eighth Amendment forbids only those sentences that are grossly disproportionate to the offense committed. *Contreras,* 937 F.2d at 1195; *United States v. Vriner,* 921 F.2d 710, 712 (7th Cir.1991).

The sentence Tolliver received for pleading guilty for the offense of solicitation is within the statutory maximum prescribed by Congress; indeed, he received about half of the maximum sentence. Solicitation of bank robbery carries a maximum of 12½ years imprisonment. 18 U.S.C.A. § 373(a) (West Supp.1990). We have not in the past looked very favorably upon Eighth Amendment challenges to sentences that are prescribed under the guidelines and are within the statutory maximums established by Congress. *See, for example, United States v. Alvarez,* 914 F.2d 915, 919 (7th Cir.1990) (upholding against Eighth Amendment challenge a 30–year sentence for a convicted felon to knowingly possess a firearm). Tolliver is concerned that the guidelines violate the Eighth Amendment's proportionality guarantee by equating the sentencing base offense levels of the completed crime of robbery and the solicitation of the crime. Yet, it is clear that the two offenses are not treated equally: the guidelines provide for a three-level reduction for solicitation of the base offense. U.S.S.G. § 2X1.1(b)(3)(A). We recognize the fact that Tolliver (as well as some judges) may believe that this particular guideline does not allow a sentencing judge broader discretion to tailor a sentence for the tremendous range of criminal activity that can be encompassed in the offenses of solicitation, conspiracy and attempt. *Compare* Albert W. Alschuler, *The Failure of Sentencing Guidelines: A Plea for Less Aggregation,* 58 U.Chi.L.Rev. 901 (1991). However, we cannot convert this concern into a successful constitutional challenge. The bottom line is that the length of prison terms for individual crimes involves consideration of factors that, as a general matter, is largely the function of the legislature, not the courts. And on review, we will grant substantial deference to the legislative decision. *See Harmelin v. Michigan,* 111 S.Ct. at 2703–04 (Justice Kennedy concurring).

### CONCLUSION

For all of the above reasons, the judgment of the district court is affirmed.